UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KAREN HUGHLEY

      Plaintiff

v.

WEINSTOCK, FRIEDMAN & FRIEDMAN,
P.A., et al.,

      Defendants

Civil Action No.: 1: 06 cv 00088

## AFFIDAVIT OF JEFFREY M. LIPPMAN, ESQUIRE

I, Jeffrey M. Lippman, Esquire, am over the age of eighteen years, am competent to testify and have personal knowledge of the matters set forth herein. I hereby swear and affirm under the penalties of perjury that the following statements are true and correct.

1.     I am an attorney admitted to practice law in the State of Maryland and the District of Columbia.

2.     I have been a partner at Weinstock, Friedman & Friedman, P.A. since 2000.

3.     Weinstock, Friedman & Friedman, P.A. is a law firm organized in the State of Maryland for the purpose of rendering legal services. The firm has offices in Maryland and the District of Columbia, and it employs approximately 40 attorneys.

4.     Co-Defendant Bruce Richardson served as an associate at the firm for over 10 years. Mr. Richardson had some years of experience prior to being employed by Weinstock, Friedman & Friedman, P.A. Weinstock, Friedman & Friedman, P.A. hires attorneys that it believes will litigate cases in the best interests of the clients and the law firm, and it expects its attorneys to abide by the applicable rules of professional conduct. By 1999, Mr. Richardson had



EXHIBIT

1

ascended to the level of managing associate with the firm and, in fact, he acted in a supervisory capacity over some of the firm's newer associates. Co-Defendant Richardson had sole responsibility for Plaintiff Karen Hughley's employment discrimination case and no partner at the firm supervised him on this matter due to Mr. Richardson's years of experience both with the firm and prior. I did not work on the Plaintiff's employment discrimination case.

5.     Until early in 2005, I had no reason to suspect that Co-Defendant Richardson was not actively litigating his assigned cases in the best interest of his clients and the firm. However, in early 2005, I became aware of conduct by Mr. Richardson that led to his termination with the firm in February of 2005, as well as his subsequent disbarment. My partners and I then conducted an audit of Mr. Richardson's files. We discovered, for the first time, that the Plaintiff's employment discrimination claim had been dismissed due to Mr. Richardson's failure to serve the summons on the Defendant Postmaster. We immediately scheduled a meeting with the Plaintiff, honestly advised her of the dismissal of her lawsuit, and refunded her money. This is the only conversation/communication that I ever had with the Plaintiff regarding her employment discrimination suit.

6.     Plaintiff Hughley told my partners and I that she paid Mr. Richardson $3,000 related to this matter. However, the firm's accounting records only show that $1,500 was paid by Ms. Hughley. It is my belief that Mr. Richardson converted this extra money from Ms. Hughley. The firm refunded $3,000 to the Plaintiff.

7.     We reviewed Co-Defendant Richardson's file related to Plaintiff Hughley's employment discrimination claim after Mr. Richardson's termination and prior to meeting with Ms. Hughley. Ms. Hughley's file reflects that she initially sought, and received, workers' compensation benefits for the injuries that she allegedly sustained as a result of sexual

01/17/2006 11:20 FAX 410 415 6064    WEINSTOCK FRIEDMAN    ☒010/013
01/13/2006 17:29    410-752-0611    ECCLESTON & WOLF, PC    PAGE 13/13

Case 1:06-cv-00088-RWR    Document 2-5    Filed 01/17/2006    Page 3 of 3

harassment by two co-workers at the U.S. Post Office. *See*, Exhibit 1 attached to the Affidavit of Melvin Weinstock, Esquire. (January 11, 1995 Order granting workers' compensation benefits.) Ms. Hughley then sought this firm's services in attempting to recover from her employer for these same injuries in an employment discrimination case.

_____1/17/06_____
Date

Jeffrey M Lippman, Esquire