UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN HUGHLEY<br><br>    Plaintiff<br><br>v.<br><br>WEINSTOCK, FRIEDMAN & FRIEDMAN, P.A., et al.,<br><br>    Defendants | Civil Action No.: 1:06 cv 00088-RWR |

**THE WEINSTOCK DEFENDANTS' REPLY TO THE PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants Weinstock, Friedman & Friedman, P.A., Melvyn J. Weinstock, Sidney S. Friedman, Edward J. Friedman, and Jeffrey M. Lippman ("the Weinstock Defendants"), by their attorneys, William L. Mitchell, II, John S. Vander Woude, and Eccleston & Wolf, P.C., hereby submit this Reply to the Plaintiff's Opposition to their Motion to Dismiss or, in the Alternative, for Summary Judgment. In reply, these Defendants state:

**INTRODUCTION**

This matter concerns alleged legal negligence and fraud/misrepresentation by Co-Defendant Bruce Richardson in connection with the Plaintiff's federal employment discrimination claim. Significantly, Plaintiff's Opposition does not dispute that Co-Defendant Richardson was the sole attorney responsible for her employment discrimination claim. Plaintiff's Opposition and the exhibits attached thereto, rather, confirm that this fact is undisputed. *See*, Plaintiff's Opposition at p. 4, ¶ 5; Affidavit of Plaintiff Karen Hughley, ¶ 4; Exhibit 2 attached to Plaintiff's Opposition; Exhibit 3 attached to Plaintiff's Opposition.

Plaintiff's Opposition also raises no facts to show that the Weinstock Defendants had any reason to suspect that Co-Defendant Richardson, an experienced, managing associate with more than 10 years of experience with the Defendant law firm alone, was incapable of handling the Plaintiff's claim. It is apparent from the Plaintiff's Opposition that the Plaintiff's claims against the Weinstock Defendants amount to nothing more than an improper guilt by association theory of liability. As is explained in detail below and in these Defendants' original Motion, this theory of liability fails as a matter of law. The Weinstock Defendants respectfully submit that they would be unduly prejudiced if the Plaintiff were allowed time to conduct discovery in a case where the Complaint fails to state valid claims against these Defendants and the Plaintiff has not raised any material factual disputes that preclude the entry of summary judgment at this time.

I.  **Plaintiff's claims against the individual Weinstock Defendants fail as a matter of law because the undisputed facts show that the Plaintiff cannot make out a prima facie claim for negligent supervision.**

The Maryland Professional Association statute shields the individual Weinstock Defendants[1] from liability for the negligent and/or wrongful actions/omissions of Co-Defendant Richardson, a former employee of the Defendant law firm, unless they were negligent in appointing, supervising or cooperating with him. MD. CODE ANN., CORPS & ASS'NS, § 5-121(a)(2)(1999). As is explained in detail below, the individual Weinstock Defendants are entitled to judgment as a matter of law as to the Plaintiff's negligence and fraud/misrepresentation claims. The undisputed facts show that the Plaintiff cannot make out a prima facie case for negligent supervision against them, which is the only direct claim plead against them in the Complaint.

---

[1] As defined in these Defendants' original Motion, "the individual Weinstock Defendants" include Defendant Melvyn Weinstock, Esquire, Defendant Sidney Friedman, Esquire, Defendant Edward Friedman, Esquire, and Defendant Jeffrey Lippman, Esquire.

Plaintiff does not dispute that in order to state a claim for negligent supervision, she must show that the individual Weinstock Defendants knew or should have known that Co-Defendant Richardson behaved in an incompetent manner and, armed with that knowledge, proceeded to inadequately supervise him. Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C. 1986). *See*, Plaintiff's Opposition at p. 8. Plaintiff argues, without any factual support, that the Weinstock Defendants knew or should have known of Co-Defendant Richardson's actions due to the fact that the Plaintiff's District Court Complaint was dismissed in October of 2003 and Defendant Richardson's actions were admonished in a September 27, 1999 Order from Administrative Law Judge Fellin. *See*, Plaintiff's Opposition at pp. 8-9.

Plaintiff's argument fails, however, to establish the requisite element of foreseeability in her negligent supervision claim because it is undisputed that these Defendants never worked on the Plaintiff's employment discrimination case. *See*, Exhibits A-D, ¶ 4, attached to these Defendants' Motion. Plaintiff's Opposition actually confirms that this fact is undisputed. *See*, Plaintiff's Opposition at p. 4, ¶ 5. As of September 27, 1999, when the Plaintiff first contends that these Defendants should have somehow known that Co-Defendant Richardson required supervision as to the Plaintiff's claim, Co-Defendant Richardson was a managing associate with the firm. *See*, Exhibits A-D, ¶ 4, attached to these Defendants' Motion. Moreover, Defendant Richardson was admitted to the Maryland Bar in 1986. He had approximately ten (10) years of legal experience before he even took on the Plaintiff's case. Exhibit 1; Exhibit 2; Exhibit 3.[2] *See also*, Exhibit A attached to Exhibit 1. By the time that the Plaintiff's Complaint was dismissed from the U.S. District Court, Co-Defendant Richardson had some seventeen (17) years of legal experience and there was certainly no reason for these Defendants to suspect that he required

---

[2] Attached hereto and incorporated by reference as Exhibit 1 is the Supplemental Affidavit of Defendant Jeffrey Lippman, Esquire. Attached as Exhibit A to Exhibit 1 is a copy of Co-Defendant Richardson's resume, which details his substantial legal experience prior to joining the Defendant law firm. Exhibits 2 and 3 are the Supplemental Affidavits of Defendants Sidney S. Friedman and Edward J. Friedman.

\\192.168.0.3\Document\52862\Motion\ROP-MSJ.doc          3

supervision on the Plaintiff's case, particularly on how to serve a summons on a Defendant. *See,* Exhibits 1-3.

Plaintiff Hughley, moreover, attested in her Affidavit that she only met with and discussed her case with Co-Defendant Richardson. *See,* Plaintiff's Affidavit at ¶ 4. Additionally, Exhibit 2 to the Plaintiff's Opposition, the docket entries from the Plaintiff's employment discrimination case, reveals that Co-Defendant Richardson was the sole attorney representing the Plaintiff in the case and, thereby, the sole attorney receiving notices and orders from the Court related to the Plaintiff's claim. There is absolutely no factual support for the Plaintiff's leap of logic that the individual Weinstock Defendants, who undisputedly performed no work on the Plaintiff's case, received and reviewed court orders issued in the case to Co-Defendant Richardson. Moreover, Plaintiff's Opposition and her attached Affidavit fail to raise any facts to show that these Defendants had actual and/or constructive knowledge of Co-Defendant Richardson's actions/omissions. For instance, there are no allegations that the Plaintiff contacted any of the individual Weinstock Defendants regarding the status of her case until after Richardson was terminated from the firm and the Plaintiff's claim had already been dismissed.

The undisputed facts, therefore, show that the Plaintiff cannot make out a prima facie claim for negligent supervision against the individual Weinstock Defendants. Therefore, pursuant to the Maryland Professional Association statute, the individual Weinstock Defendants respectfully submit that they cannot be held personally liable for the negligent and/or wrongful acts of the firm's former employee, Co-Defendant Richardson, and they are entitled to judgment as a matter of law on all claims.

II. **Plaintiff's claims against the Defendant law firm fail as a matter of law because the undisputed facts show that Co-Defendant Richardson was acting outside the scope of his employment when he allegedly committed the acts complained of in the Complaint.**

A Defendant employer cannot be held vicariously liable for the actions/omissions of its employee that were committed for purely personal reasons. Herbin v. Hoeffel, 2005 D.C. App. LEXIS 623 (September 20, 2005). *See also*, Wadley v. Aspillaga, 209 F. Supp. 2d 119, 121 (D.D.C. 2002), *aff'd*, 82 Fed. Appx. 227 (D.C. Cir. 2003); Guzel v. The State of Kuwait, 818 F. Supp. 6 (D.D.C. 1993). Whether an employee's actions were committed within the scope of employment is a question of law for the Court when there is no material dispute of fact between the parties. Guzel, 818 F. Supp. at 9.

Plaintiff argues, without any admissible factual support, that Co-Defendant Richardson's actions were motivated, at least in part, to serve his employer and, therefore, the Defendant law firm may be held vicariously liable for Richardson's actions. In support thereof, Plaintiff relies on three entirely distinguishable cases. First, in Meyers v. National Detective Agency, 281 A.2d 435 (D.C. 1971), the Court determined that a jury could have found that a security guard was acting within the scope of his employment when he attempted to demonstrate his German Shepherd's "good training" and the dog bit the Plaintiff. Although there was testimony that the security guard was told not to bring his dog to work, the security guard's company car displayed that he was with the "K-9 Division." Id. at 436. Additionally, the security guard was not called to testify at trial and, therefore, the Court concluded that a jury could have inferred from this lack of testimony that the security guard took the dog out of the car in order to promote his employer's business. Id. at 437. The other two cases, Hechinger Co. v. Johnson, 761 A.2d 15 (D.C. 2000) and Safeway Stores, Inc. v. Kelly, 448 A.2d 856 (D.C. 1982), both involved store employees that allegedly assaulted store patrons during job-related disputes. In Hechinger, the

store employee allegedly assaulted the customer during an argument that arose when the customer said that he did not have to pay for lumber scraps. 761 A.2d at 23-24. In the Safeway Stores, Inc. case, the store security guard allegedly assaulted a store customer while he was arresting the customer for causing a disturbance on the store's premises and refusing to voluntarily leave. 448 A.2d at 862.

Unlike those cases, however, a plain reading of the allegations contained in the instant Complaint reveals that Co-Defendant Richardson's actions were purely personal and not motivated to serve his employer's interest of litigating cases in accordance with the applicable rules of professional responsibility. Contrary to the Plaintiff's assertion, the facts of this matter are akin to those in Herbin v. Hoeffel, 2005 D.C. App. LEXIS (September 20, 2005). The test utilized by the Herbin Court was whether the attorney/employee's disclosure of alleged confidential information was in furtherance of the Defendant Public Defender Service's business, not whether there was merely an attorney-client relationship between the attorney/employee and the Plaintiff. Id. at 6-7. The Court concluded that summary judgment was appropriate because the undisputed facts showed that the attorney/employee's disclosure of the alleged confidential information was done for purely personal reasons. Id. at 7.

Unlike the Meyers case cited in the Plaintiff's Opposition, no reasonable jury could conclude that Co-Defendant Richardson's actions were motivated to promote the Defendant law firm, as it is alleged that he took no action to properly pursue the Plaintiff's case. Specifically, it is alleged in the Complaint that Co-Defendant Richardson failed to file required pleadings at the EEOC stage of the Plaintiff's case, and that he also allowed the Plaintiff's District Court Complaint to be dismissed for failure to serve the summons on the Defendant. See, Plaintiff's Complaint, ¶ 28-41.

Moreover, unlike the employees in Hechinger and Safeway Stores, Inc., who were allegedly overzealous in protecting their respective store's property, Co-Defendant Richardson did not have his employer's interests at heart. Each of the individual Weinstock Defendants attested in their Affidavits attached to the Motion that they learned, after Richardson was terminated, that Richardson likely converted a portion of the Plaintiff's "legal fees." Plaintiff Hughley represented to these Defendants that she paid $3,000 to Richardson related to her employment discrimination claim, but these Defendants' accounting records only show that $1,500 was collected from the Plaintiff. *See*, Exhibits A-D attached to these Defendants' Motion at ¶ 6. Co-Defendant Richardson's undisputed act of converting "legal fees" from the Plaintiff clearly shows that he was motivated by purely personal reasons, and also reveals the implausibility of Plaintiff's speculation in her Opposition that Richardson may have had the firm's interests at heart in trying to keep the Plaintiff as a client. If anything, the undisputed facts show that Richardson may have been *personally* motivated to keep the Plaintiff as a client of the Defendant law firm. (To cover up his alleged failings in the case and to maintain the additional monies paid by the Plaintiff that he is suspected of having converted.) Similarly, there is no factual basis for Plaintiff's hypothesis that Richardson may have been motivated to keep the Plaintiff from filing a malpractice action against the firm.

The allegations contained in the Complaint, along with the undisputed facts contained in these Defendants' Motion and attached Affidavits, clearly reveal that Co-Defendant Richardson's alleged actions/omissions related to the Plaintiff's employment discrimination case were not performed in furtherance of the Defendant law firm's business and, therefore, these Defendants respectfully submit that the Defendant law firm cannot be held vicariously liable for his personally motivated actions/omissions.

### III. Plaintiff's Complaint fails to state a claim for fraud/misrepresentation against the Weinstock Defendants.

An essential element of a fraud/misrepresentation claim is a false representation of material fact by the Defendant. Wiggins, Jr. v. District Cablevision, Inc., 853 F. Supp. 484, 498 (D.D.C. 1994). In this case, the Plaintiff's Complaint contains no allegations of false representations by the individual Weinstock Defendants. Rather, the only allegations of fraud/misrepresentation in the Complaint relate to Co-Defendant Richardson. See, Plaintiff's Complaint at ¶ 50-54. The Plaintiff, moreover, acknowledged in her Affidavit that she only met with and discussed her case over the years with Co-Defendant Richardson. See, Plaintiff's Affidavit attached to her Opposition at ¶ 4. The undisputed Affidavits of the individual Weinstock Defendants further establish that these Defendants' only communications with the Plaintiff occurred after Co-Defendant Richardson was terminated from the firm. These Defendants met with the Plaintiff, honestly advised her of the status of her case, and refunded her money. See, Exhibits A-D attached to these Defendants' Motion at ¶ 5. No additional discovery is necessary as to this issue since the Plaintiff's Complaint on its face fails to state a claim for fraud/misrepresentation against the individual Weinstock Defendants and the Plaintiff's own evidence attached to the Motion further clarifies that these Defendants made no false representations to the Plaintiff.

Plaintiff also vaguely argues in the Opposition, without any legal support, that the individual Weinstock Defendants may be liable for false representations of Co-Defendant Richardson as "agents of the corporation." See, Plaintiff's Opposition at p. 12. However, the Maryland Professional Association statute clearly provides that individual employees of a Maryland professional corporation may not be held liable for the negligent and/or wrongful acts/omissions of another employee unless they were negligent in appointing, supervising or

cooperating with the other employee. MD. CODE ANN., CORPS & ASS'NS, § 5-121(a)(2)(1999). As explained in detail above, Plaintiff's negligent supervision claim fails as a matter of law.

Plaintiff's fraud/misrepresentation claim against the Defendant law firm, which is based solely on the theory of vicarious liability, fails for the reasons stated above. When Co-Defendant Richardson allegedly told the Plaintiff that her case was active and took additional "legal fees" from her after her case had, in fact, been dismissed, he was clearly not acting in furtherance of the Defendant law firm's interests. For all of these reasons, the Weinstock Defendants respectfully submit that the Plaintiff's fraud/misrepresentation claim should be dismissed and/or judgment should be entered in favor of these Defendants.

## IV. Plaintiff's Complaint fails to state a claim for punitive damages against the Weinstock Defendants.

The Plaintiff's Complaint, on its face, fails to state a claim for punitive damages against the Weinstock Defendants. Specifically, the fraud/misrepresentation claim contains no direct allegations of fraud/misrepresentation by any of these Defendants. All such allegations relate to Co-Defendant Richardson. *See*, Plaintiff's Complaint at ¶ 50-54. Accordingly, the punitive damages claim against these Defendants must be dismissed because there is absolutely no showing that they exhibited the requisite evil motive, actual malice, or outrageous conduct in willful disregard for another's rights. *See*, Calvetti v. Antcliff, 346 F. Supp. 2d 92, 108 (D.D.C. 2004).

Contrary to the Plaintiff's assertion, this issue is ripe for decision and no additional discovery is necessary. Plaintiff's counsel's Rule 56(F) Affidavit admittedly does not indicate what discovery she believes could substantiate a punitive damages claim against these Defendants. Plaintiff Hughley's own Affidavit attached to the Opposition certainly fails to raise any such facts since she acknowledged in the Affidavit that she only met with and discussed her

case over the years with Co-Defendant Richardson. *See*, Plaintiff's Affidavit attached to her Opposition at ¶ 4. Exhibit 2 attached to the Plaintiff's Opposition, which purportedly represents legal fees paid by the Plaintiff, was sent directly to Co-Defendant Richardson. Additionally, Exhibit 3 attached to the Plaintiff's Opposition, the docket entries from the underlying case, shows that Co-Defendant Richardson was the only attorney whose appearance was entered in the case and, therefore, he was the only attorney that received the Order dismissing Plaintiff's case. Finally, these Defendants' Affidavits establish that they immediately met with the Plaintiff, honestly advised her of the status of her case, and refunded her money when they audited Co-Defendant Richardson's files upon his termination from the firm and discovered, for the first time, that her case had been dismissed. *See*, Exhibits A-D attached to these Defendants' Motion at ¶ 5. For all of these reasons, the Weinstock Defendants respectfully request that the Court enter an Order dismissing the Plaintiff's punitive damages claim against them.

**V.    The Weinstock Defendants are entitled to judgment as a matter of law on the Plaintiff's legal malpractice claim (Count I) since the undisputed facts show that the Plaintiff's underlying employment discrimination claim had no value.**

In the Weinstock Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, it was demonstrated that the Plaintiff's underlying employment discrimination claim (for which she now asserts her claim for legal malpractice) had no value, since she had already been awarded workers' compensation benefits for those claimed injuries. As a result, she would have been barred from recovering under the Title VII claim. Plaintiff's Opposition confirms that she did receive Federal workers' compensation benefits for these very same claimed injuries. Plaintiff's Affidavit at ¶7. However, Plaintiff contends that her receipt of Federal workers' compensation benefits did not bar her from also recovering under Title VII, citing Nichols v. Frank, 42 F.3d 503 (9th Cir. 1994). Plaintiff claims that she received only "partial benefits" pursuant to the Federal Employment Compensation Act ("FECA"), and that

she was still entitled to pursue, under Title VII, a claim for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses," as well as "full back pay," pursuant to the reasoning of the <u>Nichols</u> decision.

A review of the statute governing awards of federal workers' compensation shows that the reasoning of <u>Nichols</u> is in direct contradiction to the statute. The exclusivity provision of FECA states:

> (b) <u>An individual entitled to benefits under this subchapter because of his injury</u>, or because of the death of an employee, <u>who also is entitled to receive from the United States under a provision of statute other than this subchapter payments or benefits for that injury or death (except proceeds of an insurance policy)</u>, because of service by him (or in the case of death, by the deceased) as an employee or in the armed forces, <u>shall elect which benefits he will receive.</u> The individual shall make the election within 1 year after the injury or death or within a further time allowed for good cause by the Secretary of Labor. The election when made is irrevocable, except as otherwise provided by statute.
>
> (c) <u>The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee,</u> his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceedings under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

(Emphasis supplied). 5 U.S.C. §8116(b) and (c). A plain reading of the statute demonstrates that there are no exceptions for Title VII claims to the exclusivity provision and, in fact, the statute expressly states that an individual is not entitled to receive any benefits under any other federal statute for that same injury. See, <u>Alexander v. Frank</u>, 777 F. Supp. 516, 523-524 (N.D. Texas 1991); <u>Black v. Frank</u>, 730 F. Supp. 1087, 1090-1091 (S.D. Ala. 1990). Since Plaintiff

admits that she received benefits for this same claim under FECA, that was her sole and exclusive remedy, and she was not even entitled to pursue the Title VII claim.

As a result, the Title VII case which was "lost" as a result of the alleged legal malpractice had no value, and the legal malpractice claim should be dismissed.

WHEREFORE, for all of the reasons stated above and in these Defendants' original Motion, Defendants Weinstock Friedman & Friedman, P.A., Melvyn Weinstock, Esquire, Sidney S. Friedman, Esquire, Edward J. Friedman, Esquire, and Jeffrey M. Lippman, Esquire, hereby respectfully request that the Court grant their Motion to Dismiss or, in the Alternative, for Summary Judgment, and enter judgment on their behalf as to all claims.

Respectfully submitted,

\s\
William L. Mitchell, II  (D.C. Bar No.: 476101)
Eccleston & Wolf, P.C.
2001 S. Street, N.W., Suite 310
Washington, D.C.  20009
(202) 857-1696
*Attorney for Defendants, excluding Defendant Richardson*

\s\
John S. Vander Woude (D.C. Bar No.: 485423)
Eccleston & Wolf, P.C.
7th Floor – Scarlett Place
729 East Pratt Street
Baltimore, Maryland  21202
(410) 752-7474
*Attorney for Defendants, excluding Defendant Richardson*

\\192.168.0.3\Document\52862\Motion\ROP-MSJ.doc

12

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of February, 2006 a copy of the foregoing Reply to the Plaintiff's Opposition to the Weinstock Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment was mailed first class, postage prepaid, to:

> Deborah K. Hines, Esquire
> 1717 K Street, N.W., Suite 1107
> Washington, DC  20036
>
> Bruce L. Richardson
> 41 Black Oak Court
> Reisterstown, Maryland  21136

/s/
William L. Mitchell